Daniel, Judge.
 

 — The case referred to by the Judge who tried the cause in the Superior Court
 
 {Gibbons
 
 v.
 
 Dunn,
 
 3 Murph. Rep. 548,) only decided the right under the will, of the widow of the testator in the slave Nell. It did not intimate any opinion as to the
 
 extent of the
 
 respective rights of the children of the testator to the issue' or
 
 increase
 
 of Nell. That question now comes before us for decision. The testator had given Nell to his wife during her life or widowhood. The particular clause in the will, out of which the dispute arises, is as follows : “ I desire the negro woman Nell shall become the property of Jane Gibbons and Betsey Spratt, (who were two of the testa
 
 *449
 
 tor’s daughters) at their mother’s
 
 death,
 
 or at the
 
 time
 
 my son Thomas arrives to
 
 sixteen years old;
 
 and her increase, if any, before
 
 that time,
 
 to be equally divided among the rest of my children.” The testator left five other children, three sons and two daughters, in whose behalf the defendant resists the plaintiff’s recovery.
 

 The slave
 
 Richard,
 
 the son of Nell (for the recovery of whom this action is brought,) was born after the testator’s son Thomas Dunn, had arrived to the age of sixteen years. The widow of the testator being dead, the plaintiffs contend, that the boy Richard, in law, comes to them with Nell, the mother: They say, he is not one of the increase of Nell which was intended by the
 
 will
 
 to go to the other children of the testator. The defendant contends, that all the
 
 increase of Nell
 
 belonged to the rest of the children, which should be born at any time before the
 
 two
 
 events occurred, viz., the arrival of Thomas at the age of sixteen years,
 
 and
 
 the death of the testator’s widow. There are two periods of time marked in the clause or sentence;
 
 first,
 
 the death of the mother; and
 
 secondly,
 
 the arrival of Thomas to the age of sixteen years. That portion of the increase of Nell, which, by the will, was intended to go to the
 
 rest
 
 of the children, is to be limited, as we conceive, to the time that Thomas Dunn, the son of the testator, arrived at the age of sixteen years. The relative
 
 “ that time,”
 
 in the sentence, refers to the
 
 next
 
 antecedent, according to grammatical construction; which antecedent would be the
 
 time
 
 that Thomas arrived at sixteen years. But the intention of the testator, if clear and consistent with the rules of law, is to govern, without regard to the grammatical construction, or whether it deserves favour or not.
 
 Thellusson
 
 v.
 
 Woodford,
 
 4 Ves. 311; 11 Ves. 112. Did the testator intend that more of the issue or increase of the slave Nell should go to the
 
 “ rest of the children,”
 
 then by a grammatical construction the clause or sentence would authorise ? To ascertain the intention, the state of the testator’s family at the time of making the will, may be attended to.
 
 Odell
 
 v.
 
 Crone,
 
 1 Ball & B. 449 ; 3 Dow. 68. The whole will may be examined, and the state of the property looked at, if it
 
 *450
 
 appears on the face of the will: not
 
 de hors,
 
 unless to explain a
 
 latent ambiguity. Page
 
 v.
 
 Leapenwell,
 
 18 Ves. 466.
 
 Kellet
 
 v.
 
 Kellet,
 
 1 Ball & B. 533; 3 Dow. P. C. 248. Following these rules to ascertain the intent, although it appears that the two daughters (plaintiffs) were married, and would of course be provided for by their husbands, yet it is not to be supposed that the testator intended to give to those two the slave Nell only, without any of her increase which might be born before both events mentioned in the clause had happened. The time when one of the events was to happen (the arrival of Thomas to sixteen years) was certain and fixed; but the other, the death of the mother, was uncertain, and might be prolonged to such a period, that Nell would be too old to breed, and might be an expense instead of a benefit. Nell was twenty years old at the making of the will; she then had two children, one alive (Esther) the other dead. Thomas, the son of the testator, was, at the making of the will, only seven years old. Nell, probably, would have five children before Thomas attained sixteen years, when she would be twenty-nine years old, which would give one slave to each of the “ rest of his children.” It seems to us, that the testator intended a benefit and a generous bounty to all his children; for each of whom there is nothing to show us, that he did not have an equal parental regard. To his three sons, by his will, he left his lands (viz.): To Andrew three hundred and twenty acres and one-third of his pine lands, a horse, cow, and plantation utensils. To James and Thomas, he gave the tract of land he had lived on (three hundred and twenty acres,) also each one-third of his pine lands. His new wagon, he gave to his three sons. He directed his plantation to be kept up, and his younger children to be raised on it; and after the death of his widow, he gave the slave Esther and her
 
 increase
 
 to his other two daughters Martha and Mary. He also gave to each of them a horse and saddle, two cows, a feather bed and furniture. All the property which he had at any time before given to Jane and Elizabeth, (the plaintiffs) as he states in his will, was to Jane, a mare and colt, two cows and calves, and some household furniture. To Elizabeth, he had given a mare, two cows, and some household
 
 *451
 
 furniture. To what property he had given his five other children, by other clauses in his will, he, by the clause now in question, meant to give them an additional portion in the anticipated increase, to a given period, of the slave Nell. If we confine that period to the arrival of Thomas to the age of sixteen years, something like a rational distribution of his property among all, will appear to have been intended. It appears to us, that it was for the benefit of the younger children the testator directs Nell to remain on the plantation until Thomas should be sixteen, although the widow might die or marry before that time. That period limits the interest of the children as against the general remainder given to the plaintiffs. But there was also the benefit intended for the testator’s wife, which was a provision during her life or widowhood. That induced him to give Nell and her issue to the wife beyond Thomas’s coming of age, and is the sole motive for keeping Nell and issue from the plaintiffs; and, therefore, no construction is admissible, but such an one as may' be necessary to give effect to that intention. That cannot reach the disposition of the issue, after the determination of the widow’s estate; she is no way concerned in that question. Nor can we suppose the testator intended to make the interests of his respective children, as against each other, dependent upon the length of their mother’s life. It is more rational, that he should give to the plaintiffs all the issue, except that which should be born before they could get Nell, in any possible event, and to the other children, all such issue thus born before that event. From every legal and fair rule of examining this case, it seems to us, that the grammatical construction of the clause, is not at variance with the real intention of the testator; and, as the slave Richard was born of Nell, after the testator’s son Thomas arrived to the age of sixteen years, he went to those, who, in law, were entitled to the mother; and, as the widow of the testator died before the bringing of this action, the plaintiffs are entitled to recover. The judgment of non-suit must be reversed, and a judgment rendered for the plaintiffs, pursuant to the verdict.
 

 Per Curiam. Judgment reversed.